UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

In re:

Michelle Lynn Dixon,  Case No. 17-31675-beh

Debtor.  Chapter 13

**DECISION ON DEBTOR'S MOTION FOR CONTEMPT, TURNOVER, AND SANCTIONS AGAINST BRITE FINANCIAL SERVICES, LLC**

Shortly before the debtor filed this case, Brite Financial Services, LLC ("Brite" or "Brite Financial") repossessed the debtor's leased 2016 Chrysler 200, due to the debtor's failure to make payments under the parties' lease agreement. After she filed this case, the debtor, via counsel, demanded that Brite return the vehicle, and Brite refused. The debtor then moved to hold Brite Financial in contempt, for the return of the vehicle, and to impose sanctions on Brite for willful violation of the automatic stay.[1]

Brite objected to the motion, arguing that the debtor's lease terminated pre-petition, and therefore the debtor had no interest in the vehicle when she filed her petition. As a result, Brite could not be compelled to return the vehicle, and did not violate the stay.

The parties filed supporting briefs and documentation. At a January 8, 2018 hearing, the court denied the debtor's motion for the reasons stated on the record. This decision supplements the court's earlier ruling. The court notes that determinations such as these are fact-specific, and may differ based on the language of the lease contract at issue.

---

[1] The debtor's motion does not cite to any sections of the Bankruptcy Code, but the court assumes that the debtor is relying, at least in part, on 11 U.S.C. section 542(a) (turnover of property of the estate), and section 362(k) (damages for a willful violation of the stay).

## FACTUAL BACKGROUND

On June 16, 2017, the debtor entered into a motor vehicle lease with Brite Financial, LLC. CM-ECF, Doc. No. 16-2, at 1, 10. The lease required the debtor to make payments of $245.30 bi-weekly beginning June 16, 2017. *Id.* at 1. By September 2017, the debtor had defaulted on her lease payments. *See* CM-ECF, Doc. No. 31-1. As a result, on September 6, 2017, Brite mailed a Notice of Right to Cure letter to the debtor. *See id.*; CM-ECF, Doc. No. 31-2. The debtor disputes receiving this letter. The Notice of Right to Cure stated that the debtor was in default in the amount of $623.50, and provided that if the debtor did not cure the default by September 21, 2017, "then [the] entire outstanding balance will automatically be accelerated and become immediately due and payable without further notice, demand, or right to cure." CM-ECF, Doc. No. 31-2.

The debtor failed to cure the default by September 21, 2017. CM-ECF, Doc. No. 31-1. Brite avers that the debtor has not made any payments on the lease since August 11, 2017, *see id.*, which the debtor does not dispute. Brite repossessed the debtor's vehicle on November 25, 2017, and the debtor filed this case on December 6, 2017.

Initially after filing this case, the debtor's counsel did not have the benefit of reviewing the lease's terms, because the debtor left her copy of the lease in the repossessed car. *See* CM-ECF, Doc. No. 40, at 2. Brite Financial filed a copy of the lease agreement on the docket in a December 15, 2017 filing, CM-ECF, Doc. No. 16-2.

## THE PARTIES' ARGUMENTS

The debtor asserts that Brite did not terminate her lease pre-petition, and therefore her interest in the lease is an asset of her bankruptcy estate and subject to the automatic stay. Consequently, she argues, Brite's retention of the vehicle violates the stay. In support of this argument, the debtor contends that nothing in the lease agreement equates repossession of the vehicle with termination of the lease, pointing out that repossession of the vehicle and termination of the lease are separate remedies for a default under the lease.[2] She also asserts that Brite's September 6 Notice does not contain any language terminating the lease, and that she did not receive the Notice. CM-ECF, Doc. No. 40, at 2. Finally, she directs the court to the FAQ section of Brite's website, which indicates that a lessee may recover a repossessed vehicle within 15 days of repossession.

Brite, on the other hand, argues that the repossession of the vehicle, coupled with the September 6 Notice of Right to Cure Default, constituted termination of the vehicle. Brite asserts that Wisconsin law does not require a lessor to provide a written notice of termination of a lease. Additionally, the September 6 Notice provided that if the debtor failed to cure her default by September 21, 2017, the entire balance of the lease would become immediately due and payable without further notice, demand, or right to cure. Brite asserts that the Notice, followed by the repossession of the vehicle, establishes lease

---

[2] As an exhibit to the debtor's January 2, 2018 brief, her counsel filed a partial copy of a lease between another party and Brite Financial, rather than the debtor's own lease. The debtor's counsel explained that he did so because, as previously noted, the debtor left her copy of the lease in the glove compartment of the repossessed vehicle. Counsel apparently was unaware of the copy of the lease that Brite Financial filed on the docket on December 15, CM-ECF, Doc. No. 16-2. The language of the lease filed with the debtor's brief is substantially similar, but not identical, to the language in the debtor's lease, underscoring the fact-specific nature of these inquiries.

termination; if the debtor had no further right to cure, and then the vehicle was repossessed, the lease terminated.

## DISCUSSION

The debtor's request for turnover implicates several code provisions. Section 542(a) requires any entity in possession of property that the trustee may use, sell, or lease under section 363 to turn the property over to the trustee. Section 1303 gives chapter 13 debtors the powers of a trustee under sections 363(b), (d), (e), (f), and (l). Sections 363(b) and (d) thus allow debtors, in the shoes of the trustee, to use, sell, or lease property of the estate. And section 541(a)(1) defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case."

So, to establish the right to turnover of the vehicle, the debtor must prove that she had some interest in the vehicle at the time of filing—*i.e.*, that the lease remained in effect. Likewise, to establish that Brite violated the automatic stay, the debtor must prove as an initial matter that she had some interest in the vehicle that was subject to the stay—which also requires a showing that the lease was not terminated pre-petition. The debtor bears the burden of proof on both issues. *See, e.g., In re Sacramento Real Estate Corp.*, 201 B.R. 225, 231 (Bankr. N.D. Ill. 1996) (debtors seeking declaratory judgment that tax refund was property of the estate bore burden of proof) (citing *Gorenz v. State of Illinois Department of Agric.,* 653 F.2d 1179, 1184 (7th Cir.1981) (in turnover action by trustee, trustee bore burden of proving that property was property of the estate)); *In re Harris*, 310 B.R. 395, 399 (Bankr. E.D. Wis. 2004) (debtor bears the burden of proof in seeking damages for a willful violation of the stay).

To determine whether the lease was terminated pre-petition, the court must look at the language of the contract itself, as well as the applicable Wisconsin statutes. *See, e.g.*, *In re Dash*, 267 B.R. 915 (Bankr. D.N.J. 2001) and *In re Lamar*, 249 B.R. 822 (Bankr. S.D. Ga. 2000).

Paragraph 23 of the parties' lease governs defaults under the lease. It provides that the debtor will be in default if, among other things, "an amount greater than one full payment has remained unpaid for more than 10 days after its scheduled or deferred due date." CM-ECF, Doc. No. 16-2, at 7. Upon the debtor's default, Brite "may" do any of the following:

> (A) Terminate this Lease and require [the debtor] to pay the amount due at early termination (see Paragraphs 19 and 20, as applicable);
>
> . . .
>
> (E) Take (recover) the Vehicle where you [Brite Financial] find it; if the law allows it;
>
> . . . and/or
>
> (H) Do anything else permitted by law to exercise your [Brite Financial's] rights to the Vehicle or your [Brite Financial's] rights under this Lease.

*Id.* Paragraph 23 further provides: "Upon recovery of the Vehicle, [the debtor] will have no rights in the vehicle, unless applicable law gives [the debtor] the right to cure [her] default and reinstate the lease."[3]

Other sections of the lease provide mechanisms for either the debtor or Brite to terminate the lease early, *e.g.*, paragraphs 19 (early termination), 20 (vehicle accident and damage, or loss), and 22 (income loss protection).

---

[3] Neither the debtor nor Brite argue that any "applicable law" would allow the debtor to cure her default and redeem the vehicle here. As Brite notes in its supplemental reply brief, while Wis. Stat. § 425.208 provides a right of redemption in some situations, the lease here is exempt from that statutory provision because the total lease obligation exceeds $25,000, *see* Wis. Stat. § 421.202(6).

There is no dispute that the debtor defaulted under the terms of the lease. According to Brite, not only was the debtor in default when it sent the September 6, 2017 Notice, but the debtor did not cure the default within the 15-day deadline provided in the Notice, nor did she make any further payments on the lease in the ensuing two-plus months before Brite ultimately repossessed the vehicle on November 25.

Paragraph 23 of the lease provides Brite with a number of remedies upon the debtor's default. These options are listed in both the disjunctive and conjunctive; nowhere does the language of the lease limit Brite to only one option. The debtor's argument that the contract is ambiguous in its use of the word "may" and therefore should be construed against Brite is unavailing. Here, Brite invoked two options: lease termination, and vehicle repossession. Brite sent out a notice of default and right to cure after the debtor was in arrears more than one month of payments,[4] and the debtor did not cure her default within the time provided by the notice—or even by the November 25 repossession. As a result, Brite determined that the lease was terminated (ending the debtor's contractual rights in the vehicle), and also repossessed the car (taking away the debtor's ability to use and possess the vehicle). In doing so, Brite ended any rights the debtor had in the lease or the vehicle before she filed her case.

---

[4] The debtor argues that she did not receive the Notice of Right to Cure, and that lack of receipt somehow defeats Brite's argument that the lease terminated prepetition. But the debtor does not dispute that Brite did not act to terminate before the 15-day cure period expired, nor that she did not cure the default (or make any lease payments) either within those 15 days or the 60 days that followed. Nor does the debtor argue she never received a copy of the lease she signed, which sets out the various early termination remedies that either lessor or lessee may invoke. Moreover, the lease does not require mailing the Notice by any manner which verifies receipt. The Notice sent to the debtor, attached to Mr. Lurie's affidavit, states that it was sent by certified mail on September 6, 2017, but no return receipt number is included.

The language of the lease seems to contemplate this series of events; paragraph 23 expressly provides that once Brite recovers (repossesses) the vehicle, the debtor "will have no rights in the vehicle, unless applicable law gives [the debtor] the right to cure [her] default and reinstate the lease." The debtor points to no contrary controlling law. The debtor does cite *In re Dash*, *supra*, but *Dash* dealt with different lease terms. Here, the debtor was apprised of the termination options available to Brite, should she default on payments. While the debtor argues the lease is faulty because it does not expressly define a moment of "termination," the court concludes that the lease adequately advises both parties as to how each may terminate the lease.

The debtor raises, as a last argument, Brite's website, which seems to acknowledge an opportunity to redeem a repossessed vehicle. The statements on Brite's website are not part of the debtor's lease contract with Brite, and therefore do not govern the outcome of this matter.

In sum, the debtor has not carried her burden of proving that she had any interest in the leased vehicle at the time of filing that became property of the estate. As a result, the court cannot compel turnover, nor can it find that Brite Financial violated the automatic stay.

The court has entered a separate order consistent with this decision.

Dated: January 11, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge